# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, successor to National City Bank, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 13 C 3078<br>)<br>) Judge Sara L. Ellis |
| GUZINSKI BUILDERS, INC., THOMAS GUZINSKI, JANE GUZINSKI, and STATE BANK OF COUNTRYSIDE, | )<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff PNC Bank, National Association ("PNC"), as successor to National City Bank ("National City"), filed a complaint to foreclose a mortgage against Defendants Guzinski Builders, Inc. ("GBI"), and Thomas and Jane Guzinski (the "Guzinskis," and collectively with GBI, the "Guzinski Defendants").[1] The Guzinski Defendants asserted numerous affirmative defenses and counterclaims seeking to prevent foreclosure and contending that the mortgage and underlying line of credit are not in default. PNC has moved for summary judgment. Although there is no dispute that PNC's right of foreclosure was triggered, PNC has not sufficiently supported its motion for summary judgment to defeat all of the Guzinski Defendants' affirmative defenses and counterclaims so that a judgment of foreclosure may be entered at this time. As a result, the case must proceed to address the Guzinski Defendants' defenses and counterclaims of ratification, equitable and promissory estoppel, unclean hands, and violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*

---

[1] State Bank of Countryside was also named as a Defendant because it holds a subordinate judgment lien against the mortgaged property. State Bank of Countryside has not filed an appearance in this action.

## BACKGROUND[2]

On February 7, 2007, GBI executed a small business equity line of credit agreement (the "line of credit") in favor of National City in the original principal amount of $400,000. To secure the line of credit, the Guzinskis executed a mortgage in National City's favor, pledging property at 5705 Midlothian Turnpike, Midlothian, Illinois (the "property"). The mortgage included a waiver of the Guzinskis' right of redemption to the extent permitted by Illinois law.[3] On November 6, 2009, PNC and National City merged, making PNC National City's successor to the mortgage.

The line of credit defines default as, among other things, "failure to make any payment when due under this Agreement or under any other note or obligation to Lender." Doc. 84-1 at 18. The line of credit specifies that, "[u]pon the occurrence of a Default, . . . the entire amount owing on the Account shall, at Lender's option, become immediately due and payable without demand or notice," that "[i]nterest after Default, whether prior to or after judgment by a court of competent jurisdiction, shall continue upon the outstanding balance until paid in full at the higher of the rate provided in this Agreement or the rate otherwise permitted by law," and that

---

[2] The facts in this section are derived from the Joint Statement of Undisputed Material Facts, Doc. 84, PNC's Supplemental Affidavit of Proof, Doc. 77, and Thomas Guzinski's Affidavit. Thomas Guzinski's Affidavit is referenced in the Guzinski Defendants' response and found in the record several times, including attached to their Answer, Affirmative Defenses, and Counterclaim. Doc. 66. But the Court will refer to the affidavit attached to the Guzinski Defendants' motion to dismiss at Doc. 41, as that is the only place in the record where all the exhibits to the affidavit are also attached. All facts are taken in the light most favorable to the Guzinski Defendants, the non-movants.

[3] The parties agreed in the Joint Statement of Undisputed Material Facts that the Guzinskis waived the right of redemption in the mortgage. But the mortgage only provides that the Guzinskis waive the right of redemption "to the extent permitted under 735 ILCS 5/15-1601(b) or any similar law existing after the date of this mortgage." Doc. 84-1 at 31. Section 1601 provides that a waiver of a mortgagor's right of redemption with respect to residential real estate is void. 735 Ill. Comp. Stat. 5/15-1601(a). Thomas Guzinski's affidavit states that the property is his personal home. *See* Doc. 44-1 ¶ 6. Although the Court will not make a definitive ruling on the issue because it has not been raised by the parties and is not at issue here, Thomas Guzinski's statement suggests that the Guzinskis retain the right of redemption.

"Borrower agrees to pay upon demand all of Lender's costs and expenses, including, without limitation, court costs and reasonable attorneys' fees for Lender's own salaried lawyers or independent counsel that it hires, incurred in connection with the enforcement of this Agreement or the enforcement or protection of Lender's rights in the Property." *Id.* The mortgage provides that an event of default includes GBI failing to make any payment when due under the line of credit and the Guzinskis failing to make any required tax or insurance payments when due. *Id.* at 28–29. Upon the occurrence of an event of default, PNC has the right to declare the entire indebtedness due and payable and to pursue judicial foreclosure of the property. *Id.* at 29–30. The mortgage provides that PNC is entitled to reasonable attorneys' fees if it institutes a lawsuit to enforce the terms of the mortgage and that all reasonable expenses are to be included as part of the indebtedness. *Id.* at 30.

GBI received monthly statements on the line of credit beginning on May 12, 2007.[4] GBI failed to make monthly payments due under the line of credit on the following dates: December 12, 2009; February 13, 2010; June 13, 2010; September 13, 2010; November 13, 2010; March 13, 2011; May 13, 2011; June 13, 2011; September 13, 2011; August 13, 2012; March 12, 2013; May 13, 2013; June 13, 2013; July 13, 2013; and August 13, 2013. From September 2013 through May 2014, GBI made monthly interest payments under the line of credit.[5] It did not make any payments in June 2014, but then made two interest payments in July 2014. Since then, GBI has made three additional interest payments on November 24, 2014, May 6, 2015, and May

---

[4] PNC claims it is unable to provide the Court with hard copy statements after July 2013 because it transferred accounting systems. Doc. 82 at 2–3.

[5] The Joint Statement of Undisputed Facts indicates that interest payments began in September 2013. The exhibit to which the Statement cites suggests, however, that an interest payment was also made in August 2013. *See* Doc. 84-7 at 6.

7, 2015.[6] According to PNC's records, as of May 15, 2015, GBI owes PNC a total of $418,680.80 on the line of credit, broken into $396,959.79 in principal, $16,909.76 in interest, and $4,811.25 in late fees.

On February 14, 2013, PNC sent the Guzinski Defendants a demand letter and statutory grace period notice pursuant to 735 Ill. Comp. Stat. 5/15-1502.5. The demand letter stated that GBI was in default under the line of credit because it had failed to timely pay the installment payments as due and that the Guzinskis were in default under the terms of the mortgage for failing to pay and keep the property real estate taxes current. Having previously notified the Guzinski Defendants that the defaults made the entire balance of the line of credit immediately due, PNC gave notice that it would initiate litigation to collect and foreclose the mortgage if the line of credit and the outstanding real estate taxes were not fully paid by March 18, 2013.

When the Guzinski Defendants failed to comply, PNC filed this complaint on April 24, 2013. On September 4, 2013, Thomas Guzinski states that he called PNC and spoke with several representatives. He explained to the representatives that PNC was trying to foreclose on his home. The representatives told Thomas Guzinski that no foreclosure action was pending. He also was told that the line of credit was not in default and that the next payment was due on September 13, 2013. A monthly statement for the line of credit from August 2013 differs from those provided by PNC in this litigation. Although the statements provided by PNC from May 2007 to July 2013 indicate that the account is a "business credit line" and include a varying balance and minimum payment due (much like a credit card statement), Docs. 84-8, 84-9, 84-10, 84-11 (group exhibit collecting monthly statements for line of credit from May 2007 to July 2013), the August 2013 monthly statement is titled "commercial loan statement," states that there

---

[6] Again, although the Joint Statement of Undisputed Facts states that the payments were made on May 7 and May 8, 2015, the records submitted in support indicate that those payments were made on May 6 and 7. Doc. 84-7 at 10.

is no current or total principal due, provides a maturity date of 2017, and only reflects a small required interest payment, Doc. 41-4; *see also* Doc. 41-2 (printout of online payment information for September 13, 2013 payment, with similar information).

At the time the complaint was filed, the 2011 and 2012 real estate taxes on the property had been sold and were past due and owing. The Guzinskis redeemed those outstanding taxes on October 25, 2013. On September 12, 2014, the Guzinskis paid both 2013 real estate tax installments for the property. As of October 21, 2015, the first installment ($11,679.58) and second installment ($8,927.15) of the property's 2014 real estate taxes remained outstanding.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

# ANALYSIS

## I. PNC's Foreclosure Claim

PNC moves for summary judgment on its foreclosure claim, contending that there is no dispute that the Guzinskis were in default on the mortgage and that PNC is entitled to judgment as a matter of law. PNC may foreclose on the mortgage upon the debt's maturity or an event of default as provided in the mortgage. *Deutsche Bank Nat'l Trust Co. v. Vargas*, No. 12 CV 4819, 2014 WL 6835951, at *2 (N.D. Ill. Dec. 3, 2014). Here, PNC maintains two events of default warrant foreclosure: GBI's failure to make payments as due under the line of credit and the Guzinskis' failure to pay the real estate taxes on the property.

The Guzinskis Defendants acknowledge that at the time the complaint was filed, there were outstanding real estate taxes on the property and GBI had missed payments on the line of credit. But they dispute the accounting of the line of credit payments that GBI made, arguing that certain large payments were intended to cover numerous months at one time so that they were always ahead on their payments. That misunderstands GBI's payments obligations under the line of credit, however, for regardless of the size of a payment, GBI was required to make a monthly minimum payment based on the outstanding balance for that month. *See* Doc. 84-1 at 14, 16. Although making a larger payment one month may have decreased the subsequent month's minimum payment, it did not eliminate GBI's monthly minimum payment obligation. Thus, under the terms of the agreement, the missed payments constituted a default under the terms of both the line of credit and the mortgage. Additionally, even discounting these missed payments, at the time the complaint was instituted, the Guzinskis were in default because they

were delinquent on the property's real estate taxes. Thus, PNC has demonstrated that it is entitled to foreclose on the mortgage.[7]

## II. The Guzinskis Defendants' Affirmative Defenses

Although the Court has found that PNC is entitled to foreclose on the mortgage, the Guzinski Defendants have asserted five affirmative defenses to the foreclosure. The first affirmative defense is essentially a denial of PNC's claim, as the Guzinski Defendants contend that there is no default. They base this defense on the fact that after PNC filed its complaint, they paid the overdue real estate taxes and PNC representatives told Thomas Guzinski that GBI's line of credit was not in default. These post-default events, however, do not affect the Court's conclusion that a default occurred. The undisputed facts establish that, under the terms of the mortgage, the Guzinskis had failed to pay real estate taxes on a timely basis and that GBI had failed to make the required monthly payments on the line of credit, allowing PNC to declare that the mortgage was in default and to seek foreclosure. *See* Doc. 84-1 at 28–30 (specifying events of default and rights and remedies upon default under the mortgage). Even if some payments were made on the line of credit after the complaint was filed, the Guzinski Defendants admit that others were missed and that subsequent real estate taxes remain outstanding. Moreover, partial payment after the entire balance of the line of credit was called due cannot cure the default. *See Crown Life Ins. Co. v. Am. Nat'l Bank & Trust Co of Chicago*, No. 96 C 917, 1996 WL 432399, at *3 (N.D. Ill. July 29, 1996) (partial payment is insufficient to reinstate a mortgage under the Illinois Mortgage Foreclosure Law). Therefore, the Court grants summary judgment to PNC on the Guzinski Defendants' first affirmative defense. The effect of the September 2013

---

[7] Although the Guzinski Defendants denied certain issues in their answer to the complaint, such as the legal description, they do not address them in their response to summary judgment and so the Court will not address them here, finding those issues waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver).

7

representation made to Thomas Guzinski that the line of credit was not in default will be addressed in connection with the Guzinski Defendants' equitable estoppel and unclean hands defenses.

Next, the Guzinski Defendants contend that PNC's complaint does not comply with the Illinois Mortgage Foreclosure Law (the "IMFL") because it does not allege when the default occurred. *See* 735 Ill. Comp. Stat. 5/1504(a)(3)(J) (requiring complaint to include "[s]tatement as to defaults, including, but not necessarily limited to, date of default . . . ."). PNC admits that the complaint does not contain the date of default but argues that this omission is not fatal to its foreclosure action, particularly where the loan payment history is included in the summary judgment documents and the dates of each and every payment default are set forth in the Joint Statement of Undisputed Material Fact and the Supplemental Affidavit of Proof. The Court agrees that the fact that the date of default is not in the complaint does not bar PNC from recovery. The Court will not place form over substance here, where PNC substantially followed the form complaint requirements and any omission has been cured through discovery and its summary judgment filings. *See PNC Bank, Nat'l Ass'n v. Tyre Works-Hoffman, LLC*, No. 1:12-cv-07499, 2013 WL 678145, at *3–4 (N.D. Ill. Feb. 25, 2013) (refusing to dismiss complaint that failed to include date of default). The Court grants summary judgment for PNC on the Guzinski Defendants' second affirmative defense.

For their third affirmative defense, the Guzinski Defendants allege that PNC ratified a new payment stream in September 2013 by representing that there was no default on GBI's line of credit, informing them that they should make monthly payments as provided on the monthly statements, and then accepting those payments. They further allege that the monthly statements indicate that GBI's line of credit is not in default, pointing to the one monthly statement

submitted in connection with Thomas Guzinski's affidavit. "Acquiescence or a failure to repudiate on the part of a person who receives the benefits will be considered ratification." *U.S. Bank Nat'l Ass'n v. Cook*, No. 07 C 1544, 2009 WL 35286, at \*5 (N.D. Ill. Jan. 6, 2009). The Court cannot find for PNC on this affirmative defense, for in its memorandum, PNC cited an inapposite provision of the line of credit (which it admits does not apply in its reply) and otherwise only asserts that the affirmative defense is "absurd" or "ridiculous" without explaining why. *See* Doc. 79 at 9; Doc. 82 at 4. Such a conclusory argument is insufficient to meet PNC's burden on summary judgment. *See Gerhartz v. Richert*, 779 F.3d 682, 685–86 (7th Cir. 2015) (moving party that does not discharge its burden to establish that it is entitled to judgment "is not entitled to summary judgment, even if the nonmovant entirely fails to respond"); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (moving party has initial burden to demonstrate why trial is not necessary, which can "be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case" (citation omitted)). Although the Court is skeptical as to how this defense precludes PNC from foreclosing on the mortgage, particularly considering the fact that ratification of a new payment stream on the line of credit would not affect the Guzinskis' separate default with respect to the delinquent real estate taxes, the Court cannot grant summary judgment on the third affirmative defense at this time.

To prevail on their fourth affirmative defense of equitable estoppel, the Guzinski Defendants must establish by clear and convincing evidence that (1) PNC misrepresented or concealed material facts, (2) PNC knew at the time it made the representations that they were untrue, (3) the Guzinski Defendants did not know that the representations were untrue at the time they were made and acted upon, (4) PNC intended or reasonably expected the Guzinski Defendants to act upon the representations, (5) the Guzinski Defendants reasonably relied on the

9

representations in good faith to their detriment, and (6) the Guzinski Defendants would be prejudiced by their reliance on the representations if PNC is allowed to deny their truth. *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157, 196 Ill. 2d 302, 256 Ill. Dec. 313 (2001). The Court is to evaluate the evidence presented on summary judgment "through the prism of the substantive evidentiary burden." *Liberty Lobby*, 477 U.S. at 254; *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 864 (7th Cir. 2013) (applying clear and convincing standard in affirming summary judgment dismissal of fraud claim); *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853–54 (7th Cir. 2007). Although it is questionable whether the Guzinski Defendants can establish these elements with the only support in the record being Thomas Guzinski's affidavit, in moving for summary judgment, PNC has failed to demonstrate that no genuine issue of material fact exists. PNC does not address the Guzinski Defendants' allegations related to equitable estoppel, failing to set forth the elements of the defense or argue why they are not met. This is not sufficient to grant summary judgment in PNC's favor. *See Gerhartz*, 779 F.3d at 685–86; *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (burden of defeating summary judgment did not shift to non-movant where movants did not cite the "basic facts and law which, in their view, warranted summary judgment on this claim"). Similarly, because PNC merely adopts its own equitable estoppel argument to seek summary judgment on the Guzinski Defendants' unclean hands defense, the Court will not address that defense but will allow it to proceed as well. Nonetheless, the Court notes again that neither of these defenses address the Guzinskis' admitted default in failing to pay their real estate taxes and thus would seemingly not prevent PNC from foreclosing on the property.[8]

---

[8] Because this argument was not raised by PNC, however, the Court may not grant summary judgment for PNC on these affirmative defenses on this basis. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778

## III. The Guzinski Defendants' Counterclaims

### A. Declaratory and Injunctive Relief (Count I)

In their first counterclaim, the Guzinski Defendants seek a declaration that the line of credit is not in default, that PNC misled the Guzinski Defendants, and that PNC cannot charge the Guzinski Defendants foreclosure fees and costs or further pursue the foreclosure action.[9] As with the affirmative defenses of ratification, equitable estoppel, and unclean hands addressed above, however, PNC has not adequately met its burden to establish the non-existence of a factual dispute on several of these issues. Although the Court has already found that an event of default had occurred at the time PNC filed the complaint because GBI had failed to make timely payments on the line of credit, Thomas Guzinski has stated that he was told that the line of credit was not in default after the complaint was filed and PNC fails to address that statement. Because the Guzinski Defendants ask for a non-time-specific declaration regarding default in their counterclaim and there appears to be at least some dispute about the line of credit, the Court cannot grant PNC judgment on this portion of the counterclaim. The request related to misleading the Guzinski Defendants is tied to their equitable estoppel defense on which summary judgment has already been denied. And because affirmative defenses that could put an end to PNC's foreclosure efforts remain pending. the Court cannot find that an order enjoining PNC from further pursuing the foreclosure action is appropriate.

But the Court agrees that the Guzinski Defendants' request concerning foreclosure fees and costs is not appropriate. Both the line of credit and mortgage provide that PNC may recover

---

F.3d 593, 602–03 (7th Cir. 2015).

[9] This counterclaim appears redundant of other substantive claims in the action, but PNC has not sought dismissal of the counterclaim on this basis. *See Vill. of Sugar Grove v. F.D.I.C.*, No. 10 C 3562, 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) (exercising discretion to dismiss declaratory judgment claim that substantially overlapped with substantive claims).

11

reasonable foreclosure fees and costs. Doc. 84-1 at 18, 30. Moreover, the Guzinski Defendants do not respond to PNC's argument on the issue, essentially conceding it. *Bonte*, 624 F.3d at 466. Thus, the Court will not enjoin PNC from charging the Guzinskis foreclosure fees and costs in connection with its affirmative foreclosure claim.

### B. Violation of ICFA (Count II)

PNC moves for summary judgment on the Guzinski Defendants' ICFA claim, arguing that this claim fails because PNC did not make any misleading statements and the Guzinski Defendants should have known that they were in default because of the existence of this foreclosure action. PNC does not provide the Court with any case law in support of its arguments, again failing to set forth the elements of an ICFA claim or discuss which elements under ICFA's deceptive or unfair practices prongs the Guzinski Defendants fail to meet. The Court is not obligated to research the law and construct PNC's arguments for it. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"); *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) ("An advocate's job is to make it easy for the court to rule in his client's favor[.]"). Because PNC has not met its burden on this claim, summary judgment is denied. *See Carmichael*, 605 F.3d at 460.

### C. Real Estate Settlement Practices Act Violation (Count III)

In their third counterclaim, the Guzinski Defendants allege that PNC has violated the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, because it has not responded to a Qualified Written Request ("QWR") that the Guzinski Defendants sent PNC in April 2013. While PNC does not set out the standard for a RESPA violation, it argues that the Guzinski Defendants have not provided any evidence that they sent PNC a QWR. The Guzinski

Defendants respond that Thomas Guzinski attests to submitting the QWR in his affidavit, but the affidavit includes no mention of such a request. *See* Doc. 41-1 (Thomas Guzinski Affidavit). And although the counterclaim mentions that a QWR was sent, those allegations are not sufficient at the summary judgment stage to create a material issue of fact. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012) ("Mere allegations in a complaint . . . are not 'evidence' and do not establish a triable issue of fact."). The Guzinski Defendants have thus failed to provide evidence that they submitted a QWR, a prerequisite to their RESPA claim. *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011) (a "qualified written request" triggers a loan servicer's duty under RESPA to respond to a borrower's request for information (citing 12 U.S.C. § 2605(e)). Summary judgment is granted for PNC on the RESPA counterclaim.

### D. Promissory Estoppel (Count IV)

In this counterclaim, the Guzinski Defendants incorporate their allegations and arguments from their first, third, fourth, and fifth affirmative defenses, arguing that PNC failed to comply with its representations to them regarding the status of the line of credit and that the Guzinski Defendants relied on these representations in making monthly payments as reflected in the statements they have received. As the Court has found that summary judgment is inappropriate on the third, fourth, and fifth affirmative defenses, the Court adopts its discussion above on those issues and finds that this claim must also proceed.

### CONCLUSION

For the foregoing reasons, PNC's motion for summary judgment [76] is granted in part and denied in part. PNC has demonstrated its right to foreclose on the mortgage, contingent on the final resolution of the remaining affirmative defenses. Judgment is granted for PNC on the

Guzinski Defendants' first and second affirmative defenses (no default and IMWL violation) and Count III of the counterclaim (RESPA violation).  Partial judgment is also granted on Count I of the counterclaim in that the Court will not enjoin PNC from collecting foreclosure fees and costs in connection with PNC's affirmative foreclosure claim.  Summary judgment on the third, fourth, and fifth affirmative defenses (ratification, equitable estoppel, and unclean hands), on the remainder of Count I of the counterclaim (declaratory judgment and injunctive relief), and on Counts II and IV (ICFA violation and promissory estoppel) of the counterclaim is denied.

Dated: December 15, 2015

_____
SARA L. ELLIS
United States District Judge